[L. A. No. 1734.  In Bank.—May 13, 1907.]

EDWIN R. FOX, Appellant, v. W. S. WRIGHT et al., Respondents.

TAXATION—DELINQUENT LIST—DOLLAR-MARK—NUMERALS.—In the published delinquent list of unpaid taxes, the employment of numerals to represent dollars and cents, without having prefixed thereto the dollar-mark is sufficient, where the meaning and use of the numerals were fully explained in the publication itself.

ID.—NOTICE OF SALE BY STATE—NAME OF OWNER.—Under section 3897 of the Political Code the notice to be given by the tax-collector of the sale by the state of land sold to it for delinquent taxes need not contain the name of the delinquent owner of the property.

ID.—OMISSION OF NAME OF PERSON ASSESSED—CONCLUSIVENESS OF DEED.—The failure of the tax-collector to embody in the notice of the sale by the state of lands sold to it for delinquent taxes the name of the person to whom the property was assessed for each year on which there were delinquent taxes, as required by section 3897 of the Political Code, became immaterial after the issuance of the deed from the state. Under section 3787 of that code, by the issuance of the deed, the presumption of the regularity and sufficiency of the notice of sale became conclusive.

ID.—DAILY NEWSPAPER—PRESUMPTION FROM NAME.—The court will not presume merely from the fact that the title of a newspaper contained the word "daily" that it was published daily.

ID.—PUBLICATION OF NOTICE—WEEKLY PUBLICATION.—The publication of the notice of sale required by section 3897 of the Political Code, once a week for the period of three weeks, is sufficient, even if the newspaper in which the notice appeared were published daily.

ID.—SALE BY STATE—HIGHEST BIDDER—ENTIRE PROPERTY TO BE SOLD.—
The provision of section 3897 of the Political Code, requiring the
tax-collector to sell the property sold to the state for delinquent
taxes at public auction " to the highest bidder for cash," means
that the sale must be made to him who will pay the largest cash
sum for the entire property. So construed, the section is not uncon-
stitutional, although the law makes no provision for the return to
the owner of the property of any excess of the selling price above
the accrued taxes, charges, and penalties.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order refusing a new trial. N.
P. Conrey, Judge.

The facts are stated in the opinion of the court.

Cole & Cole, for Appellant.

Charles Lantz, for Respondents.

HENSHAW, J.—This is an action to quiet title, wherein
plaintiff relied upon a tax-deed to himself from the state of
California. It is in all vital respects like the case of *Fox* v.
*Townsend, ante,* p. 51, [91 Pac. 1004], this day decided.

In the published delinquent list numerals were employed to
represent dollars and cents, without having prefixed thereto the
dollar-mark. But the meaning and use of these numerals were
fully explained in the publication itself. The case is there-
fore not at all the one where nothing appears to explain the
intended meaning of the figures, (*People* v. *Hastings,* 34 Cal.
571), but, to the contrary, is a case where the meaning of the
figures is quite as fully and elaborately explained as though
they had been preceded in each instance by the dollar-sign.

Nor was the property sold for an excessive amount. With-
out entering into the computations, which were fully and ac-
curately set forth in the respondents' brief, the sums for
which the properties were sold were accurately made up of
taxes, fifteen per cent delinquency, five per cent penalty, and
the added cost of advertising.

Reference is made to the notice of sale by the state contem-
plated by section 3897 of the Political Code, and it is said that
these notices are void, as they do not contain the name of the
delinquent owner. This, however, is a requirement of section

3764 of the Political Code, which provides for the notice of sale to be given by the tax-collector where the property is to be sold to the state and not by it.   It has been held in *Ellis* v. *Witmer,* 134 Cal. 249, [66 Pac. 301], that a notice which fails to give the name of the delinquent owner is insufficient. Such requirement, however, is not found in section 3897 of the Political Code.   In this the only requirement is that the tax-collector's notice shall contain the description of the property sold, a detailed statement of all delinquent taxes, penalties, costs, and expenses up to the date of sale, "and shall give the name of the person to whom the property was assessed for each year on which there may be delinquent taxes against said property, or any part thereof."   The notices here in question seem to be deficient in this respect.   It is made to appear that the properties were sold for delinquent taxes, penalties, costs, and charges for the years 1887, 1888, 1889, 1890, 1891, 1892, 1893, 1894, and 1895.   The name of the person or persons to whom the property was assessed during these years is not given.   But, upon the other hand, since the owner had received due notice by publication of the fact that his taxes were delinquent and the property had been sold to the state for such delinquency, it was not necessary to the validity of the proceedings that any notice of the intended sale by the state should be given to him at all.   Indeed, the state might have provided that such sales could be made in private.   And under section 3787, by the issuance of the deed, the presumption of the regularity and sufficiency of this notice of sale became conclusive.   (See *Bank of Lemoore* v. *Fulgham,* 151 Cal. 234, [90 Pac. 936].)

The publication of the notice of sale required by section 3897 of the Political Code must be for three weeks.   The publication as recited in the deeds was made in a paper designated "The Los Angeles Daily Journal."   It is argued from this, without any proof, that the paper was in fact a daily journal, and that the notice should have been published as often as the paper was issued during the specified period.   But the court will not presume merely from the title of the paper that it was published daily, and, moreover, a publication under this law once a week for the prescribed period is a good publication, even if it appear in a newspaper published daily.   (*People* v. *Reclamation Dist.,* 121 Cal. 522, [50 Pac. 1068, 53 Pac. 1085].)

Section 3897 of the Political Code declares that "at the time set for such sale the tax-collector must sell the property described in the controller's authorization and said notices at public auction to the highest bidder for cash in lawful money of the United States." Respondent argues from this, under the earlier system of taxation which prevailed in this state, and which elsewhere at present prevails, that it was the duty of the tax-collector to have sold the property for the amount of the tax to the person who would pay the tax for the least quantity of land, and such is what is meant by the phrase "highest bidder" as now employed. If the law in fact contemplates that all the property must be sold, and the phrase "highest bidder" means him who will pay the largest cash sum for the property, it must result that the state will receive from its sales of such lands amounts far in excess of its accrued taxes, charges, and penalties. And (so runs respondents' argument) as there is no provision in our law for repayment to the original owner of this surplus, the law operates inequitably and unjustly in compelling such unfortunate delinquent owners to bear an excessive burden for the support of the government, and such a law violates the fundamental equitable principle which is at the basis of all of our systems of taxation,—namely, that in the apportionment of taxes due regard shall be had to making taxes uniform and compelling every person to bear only his proportionate share of them. It may at once be admitted that in the statutes of sister states, as well as of the United States, where the law requires the sale of all the property, there is commonly found a provision whereby the excess over the demands of the state is made over to the owner. It also may be admitted that in our system of revenue collection a like provision might have been inserted. But such a provision is not found. The owner of the property who has permitted his taxes to become delinquent receives notice that unless the taxes be paid by a given date his land will be sold to the state. From the date of the sale, for the full period of five years, the owner has an absolute right of redemption from the state, and after that period of five years this right of redemption is still his until the state shall have actually sold the property. For two reasons it is to the benefit of the state that property so acquired should by it be resold into private ownership. The first, because it is inexpedient

that the state should be charged with the burden of the care of many such parcels of property, its administrative machinery not being adapted to such end. In the second place, it is desirable always that the ownership of state lands, saving those which are necessary for its governmental functions, should be transferred to its citizens, whereby follow increasing population and the higher development, betterment, and improvement of the land, thus adding greatly to the wealth of the state. It must be concluded, therefore, that when the law speaks of the sale of ''the property'' it means all of the land, and when it says that the land shall be sold to the ''highest bidder'' it means him who will make the highest cash bid for all the property. It will not be questioned but that the state might have provided that the surplus moneys received by it from such sales should be paid over to the former owners of the properties sold. But the single question which is to be considered is that of the power of the state to decree such sales and retain the money. If there be no violence done to the constitution of this state or of the United States by a law whereby under the indicated circumstances the state retains such excess moneys to its own use, no equitable considerations may move a court to declare void that which the legislature has the power to decree. It is to be noted, then, in considering this, that the delinquent owner is given process of law in the notice of the sale to the state of which he is advised by publication. It is to be noted, moreover, that the liberal period of redemption of full five years is accorded him as an absolute right. At the end of this five years the deed to the state is made, and the title of the state becomes absolute. We are unable to discover any constitutional objection which interposes and invalidates the state's title, and none has been pointed out. We are unable to see why the state may not obtain a title free from all equities in the former owner at the expiration of five years as may a private citizen after foreclosure upon the mortgage when the period of redemption following such foreclosure has passed. That in other states the laws provide for a payment to the owner of the surplus moneys after the state's exactions have been met we can regard only as an act of generosity upon the part of the state, and not as the performance by it of a constitutional duty to its citizens. For these reasons we conclude that the law in this respect is constitutional.

The other propositions advanced by respondent are sufficiently answered by the cases of *Fox* v. *Townsend, ante,* p. 51, [91 Pac. 1004] ; *Bank of Lemoore* v. *Fulgham,* 151 Cal. 234, [90 Pac. 936] ; and *Baird* v. *Monroe,* 150 Cal. 560, [89 Pac. 352], and no particular mention of them is therefore necessary.

For the foregoing reasons the judgment and order appealed from are reversed and the cause remanded.

Angelotti, J., Sloss, J., Lorigan, J., McFarland, J., and Shaw, J., concurred.