[S. F. No. 15202. In Bank.—February 25, 1935.]

SOUTH SAN JOAQUIN IRRIGATION DISTRICT, Petitioner, v. W. C. NEUMILLER, as Tax Collector, etc., Respondent.

Nutter & Rutherford, Hankins & Hankins and A. L. Cowell for Petitioner.

Neumiller & Ditz for Respondent.

SHENK, J.—This is an application for a writ of *mandamus* to compel the respondent, as Tax Collector of the County of San Joaquin, to give notice of the making of certain agreements between the board of supervisors of said county and the board of directors of South San Joaquin Irrigation District pursuant to section 3897d of the Political Code, enacted in 1933. (Stats. 1933, p. 2580.)

In pertinent respects the foregoing section provides that whenever any property has been deeded for delinquent taxes or assessments to the state and the same property has also been deeded for delinquent taxes or assessments to an irrigation district, the board of directors of the district may

enter into an agreement with the board of supervisors of the county in which the property is situated, subject to the approval of the state controller, for the purchase of, or for an option to purchase, the property so held by the state; that any such agreement may provide for the price for which and the terms on which the property shall be sold; that when the agreement has been approved by the state controller, he shall by written authorization direct the tax collector of the county to cause notice of the making of the agreement to be given by publication or posting, which notice shall describe the property and shall state the names of the person or persons to whom the property was assessed for the year or years of delinquent payment of taxes; that said notice shall also state that an agreement for the sale of the property has been made by the board of supervisors of the county with the public agency named in the agreement; that the tax collector shall mail a copy of the notice to the persons to whom the property was last assessed next before the making of the agreement; that the agreement shall not become effective until twenty-one days after the first publication of the notice; that if within said twenty-one day period the property is redeemed as elsewhere provided for in the Political Code, or if the property is so redeemed before the purchaser shall have complied with the terms of purchase, the agreement shall be null and void, but if the property is not so redeemed then, whenever the purchaser shall have complied with the terms of purchase, the tax collector of the county shall execute and deliver to the purchaser a deed to the property in the form provided; that upon the execution of the deed all rights to redeem the property shall be terminated, and the deed shall, except for fraud, be conclusive evidence of the performance of all of the requirements of the section and shall otherwise have the same effect as evidence and as a deed issued in accordance with section 3898 of the same code.

It appears from the petition that within the boundaries of the irrigation district there are located the three parcels of real property particularly described and generally called parcels 1, 2 and 3; that prior to December 1, 1933, each of these parcels had been deeded to the district by its tax collector for assessments levied in 1927, which assessments remained delinquent, unpaid and unredeemed, more than three years

prior to the deed to the district; that said real property is also located within the county of San Joaquin and subsequent to 1925 had been levied upon by the authorities of that county for county taxes; that these taxes had become delinquent and the land had been sold to the state; that prior to the first day of December, 1933, and after the expiration of more than five years subsequent to the sale to the state the land had been deeded to the state and that no redemption had been made; that on December 18, 1933, three separate agreements, each affecting one of said parcels, were entered into wherein the board of supervisors of said county, as first party, agreed to sell and the irrigation district, as second party, agreed to buy, the described land for a cash consideration of $3.90 per acre, payable $1.93 per acre upon approval of the sale and thirty-nine cents per acre annually thereafter until the full purchase price is paid. Upon completion of the payments the first party agreed to execute to second party a deed as provided in section 3897d of the Political Code. In default of payment and thirty days' notice thereof the second party agreed to quitclaim its interest in the land to the first party. These agreements were approved by the state controller, whereupon by written authorization he directed the tax collector to cause the notice of the making of the agreements to be given as required by the statute. The tax collector refused to comply with the direction. Hence this proceeding.

In support of his general demurrer to the petition the respondent contends that said section 3897d is unconstitutional and void for the reason that it would deprive persons entitled to redeem the lands affected of their rights to redeem, without due process of law, and would deny to them the equal protection of the law. It should first be noted that no question is here presented concerning the power or lack of power of the legislature to shorten the five-year period after the sale to the state within which redemption may be made, as provided in section 3780 of the Political Code, which section permits redemption ''by the owner, or any party in interest, within five years from the date of the sale to the state, or at any time prior to the entry or sale of said land by the state, in the manner provided by section three thousand eight hundred and seventeen''.

Nor is there any question here as to whether the legislature may, after the deed to the state, so amend the law as to add new burdens or more onerous conditions to the right to redeem than existed when the sale was made. (See *Teralta Land etc. Co.* v. *Shaffer,* 116 Cal. 518 [48 Pac. 613, 68 Am. St. Rep. 194]; *Johnson* v. *Taylor,* 150 Cal. 201 [88 Pac. 903, 119 Am. St. Rep. 181, 10 L. R. A. (N. S.) 818].) This is so for the reason that no such burdens or conditions were added or imposed by the enactment of section 3897d. The person having the right to redeem now has the same redemption right within the same time, on at least the same notice, and for the same amount, as he had before the section was enacted. The new section not only preserves to him those rights, but in reality extends the time for redemption until the purchasing district has complied with the terms of its contract. The question is therefore narrowed to this: Does the person possessing a right to redeem also have a vested or such a substantial right in the method or conditions adopted by the state for the disposition by it of its tax deeded lands as would deprive the state of the power to change the method and terms of sale thereof, after it had received title to the lands? In other words, and as applied to the present situation, has the person having the privilege of redemption, whose rights in that behalf are not made more burdensome or onerous by the subsequent legislation, the constitutional right to compel the state to dispose of its title to tax deeded lands at public auction for cash as provided by section 3817 of the Political Code as the same was in effect at the time of the sale to the state? The answer must be in the negative. ■ In the absence of constitutional limitations, and there is none here, the legislature is free to dispose of the state's tax deeded lands in any way deemed by it from time to time to be for the public interest. It is not confined to a disposal at public auction for cash but, where no self-imposed restrictions stand in the way, may dispose of said lands at private sale for cash or on credit. (*Bank of Lemoore* v. *Fulgham,* 151 Cal. 234, 241 [90 Pac. 936]; *Fox* v. *Wright,* 152 Cal. 59 [91 Pac. 1005]; *Merchants Trust Co.* v. *Wright,* 161 Cal. 149 [118 Pac. 517]; *In re Cowles,* 52 Nev. 171 [283 Pac. 400]; 25 R. C. L., p. 388; 59 Cor. Jur., pp. 166, 167; 61 Cor. Jur., p. 1234.) In fact, the legislature in section 3480 of the Political Code

has provided for public or private sale, after a period of redemption of one year, of land deeded to the treasurer-trustee of a reclamation district on account of delinquent assessment. It is clear from all the authorities and on reason that the person having the privilege of redemption has no right to the disposition by the state of its tax deeded lands in any particular way when, as here, his right of redemption is not adversely affected.

It is also insisted by the respondent that said section 3897d is void as special legislation in that it does not apply to all lands held by the state under tax deeds, but is confined to lands deeded to the state for delinquent taxes or assessments, which lands have also been deeded to an irrigation district, or other public agency, for delinquent taxes or assessments. The legislation was doubtless deemed expedient following our decision in *La Mesa Irrigation District* v. *Hornbeck,* 216 Cal. 730 [17 Pac. (2d) 143], wherein it was held that the liens for county taxes and for irrigation district assessments were of equal rank and the legislature found it necessary to provide some expeditious way to return to private ownership, and consequently to local tax rolls, lands covered by overlapping tax deeds. That the necessity existed is apparent for the reason that sales of tax titles would be complicated when purchasers could not be assured of a title free from liens possessed by other governmental agencies. The situation presented to the legislature was sufficient to justify it in placing lands so covered by overlapping tax deeds in a separate legislative classification within the rule stated with supporting authorities in 5 California Jurisprudence, pages 823 et seq.

It is to the benefit of the state that property acquired by it by tax deed be sold into private ownership (*Fox* v. *Wright,* 152 Cal. 59, 62, 63 [91 Pac. 1005]), and the same beneficent result would accrue to any subordinate taxing agency so acquiring title. This is, of course, true whether the land be covered by the tax deed of a single taxing agency or by overlapping tax deeds acquired by two or more independent taxing agencies. The obvious purpose of section 3897d was to permit the unification of the tax titles of two or more governmental agencies into one of such agencies, both for simplification and expedition in passing the title to private lands and to the local tax rolls and also as secu-

rity to the purchaser that he is obtaining title freed from all such outstanding tax titles. With this purpose in mind, and under the particular situation presented in connection with overlapping tax titles, the legislature was fully warranted in passing special legislation to meet the apparent need.

We find no merit in the further contentions of the respondent that the title of the act adding section 3897d to the Political Code violates section 24 of article IV of the Constitution; that the section is uncertain· in its terms, or that the proposed sales are not in accordance with the terms of the section.

Counsel for the petitioner call attention to an additional reason why no rights of redemption on the part of the former owners of the lands are disturbed, this for the reason that at the time of the agreements the title of such former owners had passed to the irrigation district by tax deeds duly executed. It is pointed out that under sections 47 and 48 of the Irrigation District Act such deeds passed complete title to the district freed from any right of redemption. It is accordingly asserted with much persuasion that the former owners of the lands in question are not the owners of the land nor parties in interest therein designated by section 3780 of the Political Code as those having the right to redeem. This point, however, would but constitute an alternative ground for the determination of the matter in favor of the petitioner.

Let the peremptory writ issue as prayed.

Waste, C. J., Curtis, J., Langdon, J., Preston, J., Seawell, J., and Thompson, J., concurred.