[Civ. No. 11848.   First Dist., Div. Two.   Oct. 6, 1941.]

H. W. BREWER, Respondent, v. ADELE FEIGENBAUM et al., Defendants; CITY OF ALBANY (a Municipal Corporation), Appellant.

Joseph J. Yovino-Young, City Attorney, Sheldon Attix, Jr., Robert C. Burnstein, Rupert R. Ryan and Young & Ryan for Appellant.

Irving M. Smith, City Attorney (Long Beach), Nowland M. Reid, Assistant City Attorney, Joseph B. Lamb, Deputy City Attorney, Harold P. Huls, City Attorney (Pasadena), Glenn D. Newton, City Attorney (Redding), Fred C. Hutchi-

son, City Attorney (Berkeley), E. S. Mitchell, City Attorney (Eureka), Arnold Rumwell, City Attorney (Palo Alto), Bert Fernhoff, City Attorney (Oakland), J. Kerwin Rooney, Deputy City Attorney, Albert Mansfield, City Attorney (Redwood City), and Albert Mansfield, City Attorney (San Carlos), as *Amici Curiae,* on behalf of Appellant.

Crozier C. Culp for Respondent.

SPENCE, J.—Plaintiff sued to quiet title to certain real property situated in the city of Albany. Plaintiff had judgment against all defendants but this appeal is prosecuted solely by defendant, city of Albany.

Plaintiff deraigned title through a purchaser who had purchased the property at a tax sale held on September 1, 1938, under the provisions of section 3897 of the Political Code. The essential facts were not in dispute and a written stipulation was filed at the trial covering most of these facts and also setting forth the contentions of the parties and the issue to be determined by the trial court.

It appears that said real property had been deeded to the state for delinquent taxes; that the tax sale was thereafter held and that plaintiff's grantor became the purchaser. It further appears that the city of Albany had a lien or liens upon said real property at the time of said sale for delinquent city taxes levied prior to said sale. The regularity of the proceedings for the assessment and levy of all said delinquent taxes is conceded. It is also conceded that the tax sale held on September 1, 1938, was conducted in all respects in accordance with the provisions of said section 3897; that plaintiff's grantor paid to the tax collector of Alameda County the amount bid, which was in excess of $200, and that said tax collector duly conveyed said real property to plaintiff's grantor.

The stipulation of the parties set forth their respective contentions as follows: ''(1) That defendant City of Albany claims that said tax sale had no effect upon the aforesaid lien or liens for taxes and assessments of said city existing at the time of said sale. (2) That plaintiff claims that upon said sale plaintiff's grantor became the owner in fee of said property, free and clear of all liens for taxes and

assessments claimed by the City of Albany as aforesaid existing at the time of said sale.''

The issue before the trial court was stated in said stipulation in the following language: ''That the sole issue in this case is whether said sale, under section 3897 of the Political Code, had or has the effect of wiping out and eliminating all liens on said property existing in favor of the City of Albany at the time of said sale, in view of the constitution and all laws of the State of California, and of the charter and ordinances of the City of Albany introduced in evidence, as the same existed on September 1, 1938.''

The trial court sustained plaintiff's contentions and quieted plaintiff's title against all defendants, except as to the lien of taxes levied after the date of the tax sale. The propriety of the trial court's judgment is not questioned on this appeal except insofar as it has the effect of quieting plaintiff's title against tax liens existing in favor of the city of Albany at the time of the sale for taxes levied by said city prior thereto.

It appears unnecessary to set forth in this opinion the lengthy provisions of said section 3897 of the Political Code as they existed on September 1, 1938. (See Deering's 1937 Political Code, section 3897.) That section had been amended following the decision in *La Mesa etc. Irr. Dist.* v. *Hornbeck*, 216 Cal. 730 [17 Pac. (2d) 143], and other related sections had been amended or added to the Political Code, including section 3897d. The last mentioned section was before the court in *South San Joaquin Irr. Dist.* v. *Neumiller*, 2 Cal. (2d) 485 [42 Pac. (2d) 64], and the court said on page 490: ''The legislation was doubtless deemed expedient following our decision in *La Mesa Irrigation District* v. *Hornbeck*, 216 Cal. 730 [17 Pac. (2d) 143], wherein it was held that the liens for county taxes and for irrigation district assessments were of equal rank and the legislature found it necessary to provide some expeditious way to return to private ownership, and consequently to local tax rolls, lands covered by overlapping tax deeds. That the necessity existed is apparent for the reason that sales of tax titles would be complicated when purchasers could not be assured of a title free from liens possessed by other governmental agencies.''

Nor is a detailed discussion of the provisions of said section 3897 required as there is no dispute concerning the construc-

tion to be placed upon any of said provisions and, as above indicated, it is conceded that the tax sale in question was conducted in all respects in accordance with said provisions. Suffice it to state that said section provides the procedure for the sale of real property which has been deeded to the state for delinquent taxes; provides for notice of the sale to other political subdivisions and taxing agencies having the right to levy taxes and assessments on the property; provides for certain rights which are granted to such political subdivisions and taxing agencies with respect to such sale, including the right to file claims for the amount of delinquent taxes and assessments and to share proportionately in the proceeds of such sale; and provides that the title conveyed to the purchaser is a title " . . . free and clear of all liens, taxes, assessments or encumbrances of any kind or character whatsoever levied or assessed or liened on the property which are due at the time of such sale. . . . " (Subd. 7.) The only question raised by defendant city of Albany relates to the applicability of said section 3897 to cases where the property involved is located within chartered cities.

Said defendant contends that "The tax system of the city is a municipal affair to the extent that section 3897 will not apply to the city of Albany." It is argued that "taxation for municipal purposes is a municipal affair" and that "where a city charter empowers city officials to lay down a general taxation scheme for the levy and collection of municipal taxes; and where the city ordinances provide in detail such an entire tax scheme; any general laws which relate to or attempt to control the same matters covered by such an entire tax scheme must be held inapplicable."

It appears well settled, speaking generally, that "Taxation for municipal purposes is a municipal affair. . . . " Such language was used in *Keyes* v. *San Francisco,* 177 Cal. 313 [173 Pac. 475], at page 321 and substantially the same language has been used in other cases. (See *West Coast Adver. Co.* v. *San Francisco,* 14 Cal. (2d) 516 [95 Pac. (2d) 138]; *Ex parte Jackson,* 143 Cal. 564 [77 Pac. 457]; *Ex parte Braun,* 141 Cal. 204 [74 Pac. 780]; *Storke* v. *City of Santa Barbara,* 76 Cal. App. 40 [244 Pac. 158].) But it does not necessarily follow that when a city charter empowers the governing body of said city to provide a municipal tax system and said governing body passes ordinances providing for such

system, that all general laws, which bear any relation whatever to the subject of municipal taxation, are inapplicable to such city.

The question of what constitute "municipal affairs" within the meaning of article XI, section 6 of the Constitution has been before the courts on frequent occasions and reference has been frequently made to the difficulty encountered in attempting to give to that term a precise and accurate definition. In certain authorities cited by defendant and in other authorities, it is indicated that said term "municipal affairs," as so used, is limited to those matters which may be said to be "purely" municipal affairs (see *Ex parte Braun, supra,* p. 210; *Storke* v. *City of Santa Barbara, supra,* p. 48; *Gadd* v. *McGuire,* 69 Cal. App. 347, 355 [231 Pac. 754]); or "strictly" municipal affairs (see *West Coast Adver. Co.* v. *San Francisco, supra,* pages 521, 522; *Pasadena Park Impr. Co.* v. *Lelande,* 175 Cal. 511, 515 [166 Pac. 341]); or "essentially" municipal affairs (see *Gadd* v. *McGuire, supra,* p. 355; *Pasadena* v. *Lelande, supra,* p. 515). Thus in *Pasadena* v. *Lelande, supra,* the court said at page 515, "Respondents' position here is unassailable whenever it is made to appear in any given instance that the affair is strictly municipal. But in this, as in many divers things, cases may arise where the matter is not simply and without complication a municipal affair, but where partaking of the characteristics of a municipal affair, in that the municipality is interested therein, it may essentially be much more than a municipal affair." The first inquiry which must be made in each case where the question arises is what is the "affair" under consideration.

█ In the instant case, the "affair" or matter under consideration is to be found in said section 3897 of the Political Code. That section did not purport to invade the field of general municipal taxation law which the governing bodies of chartered cities had the power to enact for their respective cities. It purported to deal only with a subject with respect to which the governing bodies of chartered cities and of other political subdivisions and taxing agencies had no power to legislate. The evident purpose of the legislature in amending said section was to attempt a solution of the problems presented by so-called overlapping tax liens and to provide a

practical, reasonable and expeditious method of returning to private ownership the lands covered by such liens for the benefit of all political subdivisions and taxing agencies which had the right to levy taxes thereon. The "affair" or matter contained in said amendment could not be said to be purely, strictly or essentially a municipal affair but was one which was at once a state, county and municipal affair. It was a municipal affair only in the limited sense that municipalities had the same interest therein as had the other political subdivisions and taxing agencies. The matter contained in said amendments to the section merely supplemented the general municipal taxation laws enacted by chartered cities and dealt with a matter which was beyond the reach of such laws. This being the case, we must conclude that the "affair" or matter covered by said amendments to said section was not a "municipal affair" within the meaning of article XI, section 6 of the Constitution and that the said section 3897 was applicable to all tax deeded lands within the state, including lands within chartered cities. It follows that the trial court properly quieted plaintiff's title against the claimed liens of the defendant city of Albany for taxes levied prior to said tax sale.

The judgment is affirmed.

Nourse, P. J., and Dooling, J. *pro tem.*, concurred.

A petition for a rehearing was denied November 5, 1941.